**OLSHAN GRUNDMAN FROME**
**ROSENZWEIG & WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Michael S. Fox, Esq.
Ellen V. Holloman, Esq.
Tel.:  (212) 451-2300
Fax:  (212) 451-2222

*Counsel to Anthony Labrosciano*
*Responsible Person for*
*Signature Apparel Group LLC*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SIGNATURE APPAREL GROUP LLC,<br><br>             Debtor. | Chapter 11<br>Case No. 09-15378 (JMP) |
| SIGNATURE APPAREL GROUP LLC,<br><br>             Plaintiff,<br><br>        v.<br><br>ROC FASHIONS, LLC, RVC<br>ENTERPRISES, LLC,  RUBEN AZRAK,<br>VICTOR AZRAK AND CHARLES AZRAK,<br><br>             Defendants. | Adv. Pro. No.  11-_____ (JMP) |

## COMPLAINT

Signature Apparel Group LLC, the reorganized debtor in the above-referenced matters

("Signature" or the "Company"), through its responsible person, Anthony Labrosciano, and by

and through its counsel, as and for its Complaint against ROC Fashions, LCC, RVC Enterprises,

1456961-3

LLC, Ruben Azrak, Victor Azrak and Charles Azrak, allege, upon knowledge as to its own acts, and otherwise, upon information and belief, as follows:

## Nature of the Action

1.     Plaintiff and Debtor Signature Apparel Group LLC ("Signature" or the "Company") brings this action to recover damages from ROC Fashions, LLC ("ROC Fashions"), RVC Enterprises, LLC ("RVC Enterprises"), and their principals Ruben Azrak, Victor Azrak and Charles Azrak (hereinafter sometimes collectively referred to as the "Defendants") in connection with a scheme to unlawfully extract and abscond with Signature's valuable intellectual property and proprietary information, and thereby defraud Signature's creditors, on the eve of Signature's bankruptcy.

2.     Signature Apparel Group LLC is an apparel company that was founded in 2003 by brothers Joseph Laurita and Christopher Laurita (hereinafter sometimes collectively referred to as the "Lauritas").  Signature initially enjoyed success as the licensee of Rocawear, Artful Dodger, and other popular garment brands.  However, the Lauritas soon drained the Company of all of its funds and assets in order to support their families' increasingly opulent lifestyle of private jets, limousines, extravagant parties, premium automobiles, designer clothing, shopping sprees, ostentatious home furnishings and lavish vacations.

3.     Facing the loss of the Rocawear license, and with Signature insolvent and in involuntary bankruptcy, the Lauritas determined to facilitate the transfer of the Rocawear license and Signature's related, valuable proprietary assets and information (including, without limitation, customer lists, industry contacts and order information) to ROC Fashions and RVC Enterprises, and to keep the proceeds for themselves individually, rather than distribute those proceeds to Signature and Signature's creditors.

2

4.      The Lauritas conspired with the Defendants to assist in Defendants' acquisition of both the Rocawear license from Iconix Brands Group, Inc. ("Iconix"), by convincing Iconix that Defendants were the best fit for the license and that the Lauritas would assist Defendants in the transition.  In the meantime, the Lauritas provided Defendants with Signature's proprietary assets and information related to its ownership and operation of the Rocawear license, in return for Defendants payment of a substantial sum to New Star Group, LLC ("New Star"), a company founded and controlled by Joseph Laurita and/or Christopher Laurita.

5.      The substantial sum paid by Defendants for Signature's proprietary assets and information should have been paid directly to Signature, for its benefit and for the benefit of its creditors.  Defendants' acquisition of Signature's proprietary assets and information, including past sales data, pending order and shipment information and other facts related to Signature's design, manufacture and sale of the Rocawear brand, provided Defendants with the necessary information to negotiate a more favorable license with Iconix and to take over the license and begin business operations with existing staff, affiliates, customers and suppliers.

6.      Through their wrongful conduct, Defendants aided and abetted the Lauritas in breaching their fiduciary duties and engaged in a civil conspiracy, which converted Signature's property and has unjustly enriched Defendants, all at the expense of Signature's estate and creditors.

### The Parties and Related Persons and Entities

7.      Plaintiff and Debtor Signature Apparel Group LLC is a limited liability company organized under the laws of the State of New York.  Prior to its bankruptcy, Signature had its principal place of business at 1370 Broadway, Sixth Floor, New York, New York.

3

1456961-3

8.      Defendant ROC Fashions, LLC is a limited liability company organized under the laws of the State of New York and is privately owned by Ruben Azrak, Victor Azrak and Charles Azrak.  ROC Fashions has its principal place of business at 1384 Broadway, Seventeenth Floor, New York, New York 10018.

9.      Defendant RVC Enterprises, LLC is limited liability company that is organized under the law of the State of New York and is privately owned by Ruben Azrak, Victor Azrak and Charles Azrak.  RVC Enterprises has its principal place of business at 1384 Broadway, Seventeenth Floor, New York, New York 10018.  RVC Enterprises is the holding or parent company of ROC Fashions.

10.     Defendant Ruben Azrak is a citizen and a resident of New York.  At all material times relevant hereto, Ruben Azrak was a member and an officer and/or director of ROC Fashions, and the Chief Executive Officer of RVC Enterprises.

11.     Defendant Victor Azrak is a citizen and a resident of New York.  At all material times relevant hereto, Victor Azrak was a member and an officer and/or director of ROC Fashions, and the President of RVC Enterprises.

12.     Defendant Charles Azrak is a citizen and a resident of New York.  At all material times relevant hereto, Charles Azrak was a member and an officer and/or director of ROC Fashions, and the Vice President of RVC Enterprises.

13.     Joseph Laurita is a citizen and a resident of California.  At all material times relevant hereto, Joseph Laurita was a member and an officer and/or director of Signature, owning a 50% share of the Company.

4

14.     Christopher Laurita is a citizen and a resident of New Jersey.  At all material times relevant hereto, Christopher Laurita was a member and an officer and/or director of Signature, owning a 50% share of the Company.

15.     New Star Group, LLC is a limited liability company that is organized under the laws of Delaware.  New Star has its principal place of business at 322 Waterview Drive, Franklin Lakes, New Jersey 07417.   At all material times relevant hereto, Joseph Laurita and/or Christopher Laurita were owners and/or members of New Star.

## Procedural Background

16.     On September 4, 2009 (the "Petition Date"), petitioning creditors Hitch & Trail Inc., Talful, Ltd. and Harvestway (China) Limited (the "Petitioning Creditors") filed an involuntary petition against Signature in the United States Bankruptcy Court for the Southern District of New York, seeking relief under chapter 7 of title 11 of the United States Bankruptcy Code.

17.     On November 5, 2009, this Court entered an Order for Relief under Chapter 7.

18.     On November 9, 2009, Signature filed a *Motion to Convert Case to a Case Under Chapter 11*.  That motion was granted on November 12, 2009.

19.     On July 1, 2010, a plan of liquidation was confirmed by this Court.  Pursuant to the plan and confirming order, Anthony Labrosciano is the responsible person of Signature, as reorganized.

## Jurisdiction and Venue

20.     This adversary proceeding is brought in this Court, in which the main underlying bankruptcy proceeding, *In re Signature Apparel Group LLC*, Case No. 09-15378 (JMP), is pending (the "Bankruptcy Proceeding").   This Court has jurisdiction over this adversary

5

1456961-3

proceeding pursuant to 28 U.S.C. § 1334(b) and § 157, Rule 7001 of the Federal Rules of

Bankruptcy Procedure, and other applicable law.

21.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

22.    Venue is proper in this Court and district under 28 U.S.C. § 1409.

## Factual Background

23.    Signature was formed in 2003 by brothers Joseph and Christopher Laurita, as a

privately-owned, multi-faceted apparel company in the business of designing, manufacturing and

distributing branded apparel worldwide.

24.    In or about 2005, Signature entered into an exclusive license with a predecessor-

in-interest of Iconix Brand Group, Inc. to design, manufacture and distribute junior's apparel

bearing the "Rocawear" trademarks (the "Rocawear License"), which License was assigned in or

about 2007 to Studio IP Holdings LLC, a subsidiary of Iconix.

25.    Beginning in or about 2005, Signature designed, manufactured and distributed

apparel pursuant to the Rocawear License.

26.    Signature achieved hundreds of millions of dollars in sales through the Rocawear

License between 2005 and 2009.

27.    The proprietary assets and information developed by Signature with respect to the

Rocawear License and Rocawear-branded apparel includes, without limitation:  client, customer

and affiliate lists; order history and information; sales representative lists, industry contact and

other networking information; billing and invoicing data; business methods, plans and forecasts;

market analyses and research; marketing strategies and plans; research and development

information; business relationships; product and pricing information; financial information

(including profit margin, overhead, and cost information); purchasing information; personnel

information; computer programs and data bases; data compilations; and designs, patterns, samples and drawings (referred to herein as "Signature's Proprietary Assets").

28.    Between at least November 1, 2007 and November 13, 2009 (the "Relevant Time Period"), Joseph Laurita and Christopher Laurita drained Signature's corporate assets through various wrongful and improper practices, including by directing Signature to pay the personal expenses of, and make outright payments to, various Laurita family members, including their wives Adeline Laurita and Jacqueline Laurita, their brother, Anthony Laurita, and their children, including Frank Laurita, and by directing Signature to pay the expenses of and make payments to other companies owned, controlled by or affiliated with the Lauritas, including Pyramid Trading Inc., Pyramid Trading Corp., Retail Solutions, Four Brothers Retail and Cool Five LLC, or to companies or business ventures in which the Lauritas were investing, including Angelo's Favorite, The Hungry Ghosts Movie LLC, and the BSTC Group.

29.    When Signature was confronted with the loss of the Rocawear License and was on the verge of bankruptcy, the Lauritas began discussions with Defendants Ruben Azrak, Victor Azrak and Charles Azrak, as principals and officers of Defendants ROC Fashions and RVC Enterprises, regarding Defendants' potential acquisition of the Rocawear License from Iconix.

30.    The discussions between Defendants and the Lauritas concerning the Rocawear License began prior to the Petition Date, and continued after the Petition Date.

31.    After the Petition Date, the Lauritas facilitated the transfer of the Rocawear License to Defendants ROC Fashions and/or RVC Enterprises.

32.    In connection with facilitating the transfer, the Lauritas gave Defendants ROC Fashions and RVC Enterprises (through their principals and employees) unfettered access to Signature's premises, including Signature's corporate offices and warehouse locations, and to

7

1456961-3

Signature's Proprietary Assets, including, without limitation, Assets maintained in Signature's files and books and records. In particular, Defendants were provided with unlimited access to Assets contained in Signature's computer systems and servers.

33.    Defendants agreed to pay Signature for the Company's computers, but after months of free and unfettered access to and use of the computers, Defendants reneged on their agreement and abandoned the equipment.

34.    Under the guise of "consulting" services to be provided by Joseph Laurita and/or Christopher Laurita, the Lauritas were paid a sum believed to be no less than two million eight hundred thousand dollars ($2,800,00.00) (the "Diverted Funds") for facilitating the transfer of the Rocawear License to Defendants and for providing Signature's Proprietary Assets to Defendants.

35.    Defendants were directed by Joseph Laurita and/or Christopher Laurita to pay the Diverted Funds to New Star, a company owned and controlled by Joseph Laurita and/or Christopher Laurita, rather than Signature, in return for facilitating the transfer of the Rocawear License and for providing Signature's Proprietary Assets.

36.    Defendants knew that Signature was insolvent and in bankruptcy at the time that Defendants schemed with the Lauritas to facilitate the transfer of the Rocawear License and to provide Signature's Proprietary Assets to Defendants, and that Signature's Proprietary Assets rightfully belonged to Signature.

37.    Defendants, together with the Lauritas, were determined not to pay Signature for the value of Signature's Proprietary Assets; moreover, Defendants sought to insulate themselves from liability by demanding from counsel to the Petitioning Creditors a release for all claims in

8

return for purchasing hundreds of thousands of dollars worth of Rocawear-branded goods awaiting shipment from Signature's creditors, including the Petitioning Creditors.

38.    The existence and terms of the agreement between Defendants and the Lauritas concerning the Lauritas' facilitation of the transfer of the Rocawear Licenses and Signature's Proprietary Assets were never disclosed to Signature's creditors, Signature's Creditors Committee or to Signature's Responsible Person.

39.    None of the funds received by New Star and the Lauritas in connection with the agreement between Defendants, New Star and the Lauritas were provided to Signature or to Signature's creditors.

## COUNT I
## Aiding and Abetting Breach of Fiduciary Duty
## (Against all Defendants)

40.    Plaintiff and Debtor Signature incorporate paragraphs 1-39 as if fully set forth herein.

41.    At all relevant times herein, Joseph Laurita and Christopher Laurita were fiduciaries to Signature, and as such, owed fiduciary duties of loyalty and good faith to the Company, the duty to act in the best interest of the Company, and the duties to avoid self-dealing and self-enrichment at the Company's expense.

42.    As a result of Signature's insolvency, or being in the zone of insolvency, Joseph Laurita and Christopher Laurita also owed fiduciary duties to Signature's creditors, including the duties of loyalty and good faith, the duty to act in best interest of Signature's creditors, and the duties to avoid self-dealing and self-enrichment at the expense of Signature's creditors.

43.    Joseph Laurita and Christopher Laurita breached those fiduciary duties to Signature and to Signature's creditors by facilitating the transfer of the Rocawear License and

9

Signature's Proprietary Assets to Defendants, thereby removing from Signature's estate the proceeds from those transfers, and once again enriching themselves at the expense of Signature and Signature's creditors, and usurping Signature's few corporate opportunities.

44.    Defendants knew of Joseph Laurita's and Christopher Laurita's fiduciary duties.

45.    Defendants knew of, and moreover knowingly and intentionally provided substantial assistance to, Joseph Laurita's and Christopher Laurita's breaches of fiduciary duty and wrongful conduct by, among other actions, negotiating with the Lauritas terms concerning the facilitation of the transfer of the Rocawear License and Signature's Proprietary Assets that were extremely unfavorable to Signature and to Signature's creditors. Defendants knew, or should have known, that the terms were unfavorable from Signature's perspective, and that the actions of the Lauritas in agreeing to those terms were breaches of fiduciary duty from which Defendants and the Lauritas would substantially profit. Defendants also knew, or should have known, that the economics of the transfer of the Rocawear License and Signature's Proprietary Assets were never disclosed or explained to Signature or Signature's creditors.

46.    Defendants' assistance was a substantial factor in causing one or more of Joseph Laurita's and Christopher Laurita's breaches of fiduciary duty to Signature and to Signature's creditors.

47.    As a direct and proximate result of Defendants' conduct, Signature was damaged in an amount to be determined, but believed to be not less than two million eight hundred thousand dollars ($2,800,000.00), plus interest.

10

1456961-3

## COUNT II
### Civil Conspiracy
### (Against all Defendants)

48.     Plaintiff and Debtor Signature incorporate paragraphs 1-47 as if fully set forth herein.

49.     Defendant and Joseph Laurita and Christopher Laurita began discussing Defendants' possible acquisition of the Rocawear License both before and after the Petition Date.

50.     After the Petition Date, the Lauritas agreed to facilitate the transfer of the Rocawear License to Defendants, and to transfer Signature's Proprietary Assets to Defendants without paying Signature for those Assets, thereby removing both the Assets and Defendants' payment for them from Signature's estate.

51.     By agreeing to pay New Star rather than Signature for Signature's Proprietary Assets, Defendants intentionally furthered the conspiracy by providing a monetary incentive to the Lauritas to breach their fiduciary duties, thereby harming Signature and its creditors.

52.     As a direct and proximate result of Defendants' conduct, Signature was damaged in amount to be determined, but believed to be not less than two million eight hundred thousand dollars ($2,800,000.00).   Further, Defendants' conduct was willful, malicious or in complete disregard of Signature's rights; accordingly, Signature seeks relief in the form of exemplary or punitive damages in an amount to be determined.

## COUNT III
### Conversion
### (Against all Defendants)

53.     Plaintiff and Debtor Signature incorporate paragraphs 1-52 as if fully set forth herein.

11

1456961-3

54.     Signature has a possessory right and/or interest in Signature's Proprietary Assets that were transferred to Defendants as a result of the misconduct described herein.

55.     Defendants have and continue to exercise dominion over the Assets, or the equivalent value of same, in derogation of Signature's rights and to the detriment of Signature and its creditors.  In particular, Defendants have received "consulting" services with respect to Signature's Proprietary Assets and in connection with the Rocawear License that Defendants themselves have valued at a sum believed to be not less than two million eight hundred thousand dollars ($2,800,000.00).

56.     Signature has been damaged by Defendants' conversion of its property and assets in an amount to be determined, but believed to be not less than two million eight hundred thousand dollars ($2,800,000.00).

## COUNT IV
## Unjust Enrichment
## (Against all Defendants)

57.     Plaintiff and Debtor Signature incorporate paragraphs 1-56 as if fully set forth herein.

58.     Defendants each benefitted from the receipt of Signature's Proprietary Assets, which were the rightful property of Signature, and for which Defendants did not compensate or provide value to Signature.

59.     This enrichment was at the expense of Signature and, ultimately, at the expense of Signature's creditors.

60.     Justice, equity and good conscience require full restitution of the property and assets wrongfully received by Defendants from Signature.

12

1456961-3

61.      As a direct and proximate result of Defendants' wrongful conduct, Signature was damaged in an amount to be determined, but believed to be not less than two million eight hundred thousand dollars ($2,800,000.00), plus interest.

62.      Further, the Defendants' wrongful conduct entitles Signature to recapture any profits derived by Defendants using Signature's Proprietary Assets, including, by way of example and without limitation, profits earned from Defendants' use of Signature's Proprietary Assets.

**COUNT V**
**Constructive Trust**
**(Against all Defendants)**

63.      Plaintiff and Debtor Signature incorporate paragraphs 1-62 as if fully set forth herein.

64.      Defendants each benefitted from the receipt of Signature's Proprietary Assets, which were the rightful property of Signature, and for which Defendants did not compensate or provide value to Signature.

65.      This enrichment was at the expense of Signature and, ultimately, at the expense of Signature's creditors.

66.      Justice, equity and good conscience require full restitution of the value of the Assets wrongfully received by Defendants from Signature.

67.      As a direct and proximate result of Defendants' wrongful conduct, Signature was damaged in an amount to be determined, but believed to be not less than two million eight hundred thousand dollars ($2,800,000.00), plus interest.

68.      Further, the Defendants' wrongful conduct entitles Signature to recapture any profits derived by Defendants using Signature's Proprietary Assets, including, by way of

13

1456961-3

example and without limitation, profits earned from Defendants' use of Signature's Proprietary

Assets.

69.    All monies received by Defendants in connection with Signature's Proprietary

Assets should be held in constructive trust for the benefit of Signature and its creditors.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff and Debtor Signature requests that the Court enter judgment

against Defendants as to the counts and causes of actions set forth above as follows:

(i)    on the first count and cause of action, declaring that Defendants aided and abetted breach(es) of fiduciary duty, and awarding, jointly and severally, damages to Plaintiff and Debtor Signature an amount to be determined but not less than two million eight hundred thousand dollars ($2,800,000.00);

(ii)    on the second count and cause of action, declaring that Defendants engaged in a civil conspiracy, and awarding jointly and severally, damages to Plaintiff and Debtor Signature an amount to be determined but not less than two million eight hundred thousand dollars ($2,800,000.00), as well as punitive damages of three times the damages caused to Signature, or in an other amount as the Court may determine;

(iii)    on the third count and cause of action, declaring that Defendants converted Signature's property, and awarding jointly and severally, damages to Plaintiff and Debtor Signature an amount to be determined but not less than two million eight hundred thousand dollars ($2,800,000.00);

(iv)    on the fourth count and cause of action, declaring that Defendants were unjustly enriched, and awarding jointly and severally, damages to Plaintiff and Debtor Signature an amount to be determined but not less than two million eight hundred thousand dollars ($2,800,000.00);

(v)    on the fifth count and cause of action, establishing a constructive trust over monies received by Defendants as a result of or in connection with Signature's intellectual property;

(vi)    declaring that Plaintiff and Debtor Signature is entitled to interest, attorneys' fees and costs; and

14

1456961-3

(vii)    granting such other and further relief in Plaintiff and Debtor Signature's favor, at law or in equity, that the Court may deem just.


Date:   New York, New York
        November 3, 2011

**OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY, LLP**

/s/ Michael S. Fox, Esq.
Michael S. Fox, Esq.
Ellen V. Holloman, Esq.
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Tel.: (212) 451-2300
*Counsel to Anthony Labrosciano
Responsible Person for
Signature Apparel Group LLC*

15

1456961-3