NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SIGNATURE APPAREL GROUP LLC,<br><br>Debtor. | Case No. 09-15378 (JMP) |
| SIGNATURE APPAREL GROUP LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOESEPH LAURITA, CHRISTOPHER LAURITA, NEW STAR GROUP, LLC, ROC FASHIONS, LLC, RVC ENTERPRISES, LLC, RUBEN AZRAK, VICTOR AZRAK AND CHARLES AZRAK, ICONIX BRAND GROUP, INC., STUDIO IP HOLDINGS, LLC,<br><br>Defendants. | Adv. Proc. No. 11-02800 (JMP) |
| ROC FASHIONS, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>STUDIO IP HOLDINGS, LLC,<br><br>Third-Party Defendant. | |

**MEMORANDUM OPINION DENYING THE MOTION OF STUDIO IP HOLDINGS, LLC AND ICONIX BRAND GROUP, INC. TO DISQUALIFY OLSHAN FROME WOLOSKY LLP**

BLANK ROME LLP
*Attorneys for Studio IP Holdings, LLC and Iconix Brand Group, Inc.*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

    Harris N. Cogan, Esq.
    Andrew B. Eckstein, Esq.

SILLS CUMMIS & GROSS P.C.
*Attorneys for ROC Fashions, LLC, RVC Enterprises, LLC, Ruben Azrak, Victor Azrak, and Charles Azrak*
30 Rockefeller Plaza
New York, NY 10112

    George R. Hirsch, Esq.

OLSHAN FROME WOLOSKY LLP
*Attorneys for Plaintiff*
Park Avenue Tower
65 East 55th Street
New York, New York 10022

    Kyle C. Bisceglie, Esq.
    Ellen V. Holloman, Esq.

JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

*Introduction*

Studio IP Holdings, LLC and Iconix Brand Group, Inc. ("Iconix") [1] have filed a motion (the "Motion") to disqualify counsel for plaintiff Signature Apparel Group, LLC ("Signature").

---

[1] Studio IP Holdings, LLC has been a third-party defendant in the Signature Adversary Proceeding (defined below) since May 2012. *See* Third-Party Summons [ECF No. 24]. Pursuant to the Court's July 3, 2013 Order granting

(Footnote continued on next page)

*See* Notice of Motion to Disqualify Olshan Frome Wolosky LLP [ECF No. 68]. The Motion is a lightweight litigation maneuver – a procedural tangent in this adversary proceeding that has imposed wasteful burdens on other parties and the Court. For the reasons stated, the Motion lacks merit and is denied.

Motions to disqualify are often prosecuted for tactical reasons to place an adversary at a disadvantage. Because of the extreme consequences — potential sanctions for the disqualified law firm or attorney, increased leverage over an adverse party that may be forced to find substitute counsel and the delay and added expense in reaching the merits of the dispute — such motions must be evaluated with care and properly are subjected to heightened judicial scrutiny. Such motions have their place in appropriate cases, but this is not one of them.

Here, the Motion seeks to disqualify Olshan Frome Wolosky LLP ("Olshan") as counsel for Signature by relying on two separate but equally unavailing theories. Iconix asserts that Olshan has a conflict resulting from its serial representations of (i) three petitioning creditors (the "Petitioning Creditors") who retained Olshan to commence an involuntary bankruptcy case against Signature, (ii) the Official Committee of Unsecured Creditors (the "Committee") that was appointed during the Signature bankruptcy case and (iii) Anthony Labrosciano, the individual who is empowered to act on Signature's behalf in this litigation (the "Responsible Person"). The Motion also contends that one of Olshan's partners, Michael Fox, will be a witness at trial. Olshan has opposed the Motion with a supporting declaration from Mr. Fox. A hearing on the Motion was held on June 11, 2013. At the conclusion of that hearing, the Court

---

(Footnote continued from prior page)
leave to file an amended complaint, on July 10, 2013, plaintiff filed its First Amended Complaint. *See* Order [ECF No. 88]; First Amended Complaint [ECF No. 89]. The First Amended Complaint names Studio IP Holdings and Iconix Brand Group, Inc., which are affiliated entities, as defendants. The Court refers to the two entities collectively as Iconix.

requested additional submissions from the parties (including a statement from the Responsible Person) and reserved decision.

Upon consideration of the issues presented, the Motion does not come close to establishing that disqualification is appropriate. It alleges cause in the most general way but fails to connect the dots. The multiple representations of the Petitioning Creditors, the Committee and the Responsible Person are sequential rather than concurrent and do not give rise to any disqualifying conflict of interest. Additionally, Mr. Fox has confirmed in his declaration that he will not be a witness at trial. Thus, no grounds have been shown for disqualification of the Olshan firm.

## *Background*

### *The Signature Bankruptcy Case*

On September 4, 2009 (the "Petition Date"), Olshan, on behalf of the Petitioning Creditors, filed an involuntary petition under chapter 7 against Signature. [Case No. 09-15378, ECF No. 1.] Thereafter, an order for relief was entered, the case was converted to a case under chapter 11 and Olshan was retained as counsel to the Committee. The firm's retention application included a supporting declaration submitted by Mr. Fox that disclosed Olshan's prior representation of the Petitioning Creditors (the "Fox Retention Declaration").[2] [Case No. 09-15378, ECF No. 53 Ex. B.] Olshan subsequently filed proofs of claim for two of the Petitioning Creditors – Claim No. 48-1and Claim No. 49-1.

The Committee was active in the Signature case and proposed a plan of liquidation that was confirmed on July 1, 2010 and became effective as of August 5, 2010. [Case No. 09-15378,

---

[2] Olshan filed a supplemental declaration that clarified inconsistencies between its retention application and the Fox Retention Declaration relating to monies received from the Petitioning Creditors and Signature for post-petition services. [Case No. 09-15378, ECF No. 63.]

4

ECF Nos. 131, 138.] The liquidating plan contemplated that the Responsible Person would pursue litigation claims for the benefit of Signature's unsecured creditors. [Case No. 09-15378, ECF No. 107 Art. VI.]

*The Adversary Proceedings*

Consistent with the liquidating plan, Olshan, as counsel for the Responsible Person, brought this adversary proceeding (the "ROC Adversary Proceeding") against ROC Fashions, LLC ("ROC Fashions"); RVC Enterprises, LLC; Ruben Azrak; Victor Azrak; and Charles Azrak (the "ROC Defendants"). The complaint alleged wrongful termination and transfer of rights under an existing licensing agreement between Signature and Iconix (the "Rocawear License") and challenged payments made by the ROC Defendants to former executives of Signature, Joseph Laurita and Christopher Laurita (together, the "Laurita Brothers"). The claims include (i) aiding and abetting breach of fiduciary duty, (ii) civil conspiracy, (iii) conversion, (iv) unjust enrichment, and (v) constructive trust (the "ROC Complaint"). [ECF No. 1.] ROC Fashions named Iconix as a third-party defendant. [ECF No. 23.] Signature also commenced a separate adversary proceeding against the Laurita Brothers alleging misappropriation and dissipation of corporate assets (the "Laurita Adversary Proceeding"). [Case No. 10-04207, ECF No. 1.]

Signature recently amended the ROC Complaint to combine claims from the Laurita Adversary Proceeding and the ROC Adversary Proceeding and to make direct claims against Iconix and related parties to recover damages associated with the loss of the Rocawear License. *See* First Amended Complaint [ECF No. 89]. In substance, Signature complains that it was stripped of valuable contract rights as a consequence of terminating the Rocawear License and entering into a new license for the same branded goods with ROC Fashions. *Id.* ¶ 30. The

5

activities and motivations of the parties in dealing with the rights governed by these two license agreements are material questions of fact to be determined in the litigation.

*The Motion to Disqualify*

The Motion is based on two separate provisions of the New York State Unified Court System Rules of Professional Conduct (the "Professional Rules"), 22 N.Y.C.R.R. Part 1200. The first relates to Rule 1.7 and alleges a conflict of interest between Olshan and its clients growing out of Olshan's past or ongoing representations of the Petitioning Creditors, the Committee and the Responsible Person. *See* Mem. Supp. Mot. Disqualify 16-20 [ECF No. 68]. Iconix asserts that, as a consequence of these allegedly conflicting representations, Olshan elected not to name the Petitioning Creditors as defendants in the ROC Adversary Proceeding.

Iconix relies on (i) certain communications from Mr. Fox before entry of the order for relief suggesting that the Petitioning Creditors might be willing to withdraw the involuntary petition in exchange for purchases of inventory at cost by ROC Fashions as the new Rocawear licensee, and (ii) the fact that the involuntary petition suspiciously appears to have been filed only twenty minutes before expiration of Signature's cure period relating to the purported termination of the Rocawear License. Tarshis Aff.[3] ¶¶ 13-15, 25-32, Ex. E. According to Iconix, Mr. Fox must have been aware of facts relating to the effectiveness of the Rocawear License before filing of the petition and entry of the order for relief. *See id.*

The second prong of the argument, referencing Professional Rule 3.7(b), assumes that Mr. Fox is a necessary witness who will give testimony that will be prejudicial to the Responsible Person. *See* Mem. Supp. Mot. Disqualify 10-16. Iconix alleges that Mr. Fox has

---

[3] References to "Tarshis Aff." are to the Affidavit of Andrew Tarshis in Support of Motion to Disqualify Olshan Frome Wolosky LLP [ECF No. 68].

6

knowledge of facts relevant to the status of the Rocawear License, including negotiations leading to the loss of Signature's contractual rights and the inability to locate any third party to assume that license. *See* Tarshis Aff. ¶¶ 7-16.

*Olshan's Response to the Motion*

Olshan has defended itself against these claimed ethical violations on procedural and substantive grounds and submits that no grounds for disqualification have been shown, arguing that Iconix lacks standing, has not carried its burden and no conflict exists because the representation of the Petitioning Creditors, the Committee, and the Responsible Person was successive rather than simultaneous. *See* Mem. Opp'n Mot. Disqualify ¶¶ 34-35, 39, 49-51, 76-80 [ECF. No. 72]; Fox Aff.[4] ¶ 7. The firm also submits that Mr. Fox has no personal knowledge regarding any significant issue, will neither be a witness nor serve as Signature's trial counsel and his testimony, even if presented, would not prejudice Signature. Mem. Opp'n Mot. Disqualify ¶¶ 36, 56, 65-67; Fox Aff. ¶¶ 2-6.

The Responsible Person in his supplemental affidavit supports the various points made by Olshan, stating that (i) the disqualification of Olshan would prejudice the estate, (ii) Signature accepts and relies on Mr. Fox's denial of knowledge of the status of the Rocawear License as of the Petition Date, and (iii) the decision to pursue claims against Iconix and not to name the Petitioning Creditors reflects the business judgment of the Responsible Person as a fiduciary. *See* Labrosciano Aff.[5] ¶¶ 7, 9-13.

---

[4] References to "Fox Aff." are to the Affidavit of Michael S. Fox in Opposition to Motion to Disqualify Olshan Frome Wolosky LLP [ECF No. 75].

[5] References to "Labrosciano Aff." are to the Affidavit of Anthony Labrosciano in Opposition to Motion to Disqualify Olshan Frome Wolosky LLP [ECF No. 85].

*Discussion*

The Motion, despite its lack of support in the record, still calls for a review of the applicable authorities governing Olshan's status as Signature's counsel.

The Professional Rules inform a disqualification analysis.[6] *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks and citation omitted) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."); *see also* S.D.N.Y. L.R. 1.3(a), 1.5(b)(5) (providing that the Professional Rules govern conduct of those appearing before the courts and that violations of the Professional Rules can serve as grounds for attorney discipline). The Second Circuit also relies on "guidance offered by the American Bar Association … and state disciplinary rules" to "provide general guidance," and has noted that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132 (citations omitted).

Background factors — the timing and the context of the motion and the weight of the arguments — must be taken into account, and disqualification is only warranted in situations where there is "a significant risk of trial taint." *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 80668, at *41 (S.D.N.Y. July 25, 2011) (quoting *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (internal citation

---

[6] The Professional Rules, which took effect on April 1, 2009, are the primary basis for the Court's analysis, but, "[e]ven though the Canons have been replaced by the New York Rules of Professional Conduct, the new rules still incorporate much of the substance of the old rules … [,] and … much of the precedent interpreting the old rules still remains applicable." *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, No. CV 08-1816 (LDW) (AKT), 2010 U.S. Dist. LEXIS 53290, at *9 n. 2 (E.D.N.Y. June 1, 2010) (quoting *Pierce & Weiss, LLP v. Subrogation Partners LLC*, 701 F. Supp. 2d 245, 251 (E.D.N.Y. 2010)) (additional citation omitted). Also persuasive in disqualification motions are decisions of New York State courts, the American Bar Association's Code of Professional Responsibility, and the Model Rules of Professional Conduct. *See All Star* Carts, 2010 U.S. Dist. LEXIS 53290, at *8-9 (citations omitted); S.D.N.Y. L.R. 1.5(b)(5).

omitted)); *see also Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (noting that reference to professional disciplinary bodies is an alternative remedy to disqualification).

Given the concern relative to the "tactical use of motions to disqualify counsel," disqualification motions are subject to "fairly strict scrutiny." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (internal quotation marks and citation omitted). Due to the drastic nature of the disqualification remedy the "moving party bears a heavy burden of showing that disqualification is warranted." *Pereira v. Vlachos (In re Allboro Waterproofing Corp.)*, 224 B.R. 286, 295 (Bankr. E.D.N.Y. 1998) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983)) (additional citation omitted). The Court must evaluate the circumstances cited by Iconix in light of this heavy burden.

*Conflicts and Professional Rule 1.7*

While the Bankruptcy Code contains specific provisions dealing with the "disinterestedness" of estate professionals, state disciplinary rules also "provide[] guidance to courts when asked to resolve a litigant's request for a lawyer's disqualification." *Allboro*, 224 B.R. at 291. Rule 1.7 governs conflicts of interest and provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>> (1) the representation will involve the lawyer in representing differing interests; or
>> (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;

9

>   (3) the representation does not involve the assertion of a claim by one
>   client against another client represented by the lawyer in the same
>   litigation or other proceeding before a tribunal; and
>   (4) each affected client gives informed consent, confirmed in writing.

N.Y. R. Prof'l Conduct 1.7.

In order to prevail under Rule 1.7, Iconix must demonstrate standing, establish either of the prongs of subsection (a), and show that the exceptions listed in subsection (b) do not apply. Ordinarily a party that has no present or former attorney-client relationship does not have standing to seek disqualification. *See, e.g., A.F.C. Enters., Inc. v. New York City Sch. Constr. Auth.*, 823 N.Y.S.2d 433, 434 (2006) (citations omitted) ("Since the defendant is neither a present nor a former client of the subject attorneys, it has no standing to seek disqualification based on conflict of interest."). However, regardless of standing, there is insufficient evidence to support disqualification under Rule 1.7.

The Second Circuit has observed that disqualification typically is "ordered only in essentially two kinds of cases" – conflicts in violation of the state disciplinary rules and situations where an attorney gained potential access to privileged information concerning the other side through a past representation. *All Star Carts*, 2010 U.S. Dist. LEXIS 53290, at *7-8 (quoting *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Because Iconix has not alleged that Olshan gained access to any privileged information through prior representation of the Committee or the Petitioning Creditors, the alleged conflict of interest fits the first category and relates to the firm's various representations of the Petitioning Creditors, the Committee, and the Responsible Person. *See* Tarshis Aff. ¶¶ 16-20, 25-32.

The bankruptcy context matters when a court is asked to exercise the discretion to disqualify counsel. *See Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) (citations omitted) (explaining that "[t]he disqualification of an attorney in order to forestall

10

violation of ethical principles is a matter committed to the sound discretion of the [trial] court"). Although the Motion is being prosecuted within an adversary proceeding, it adverts to Olshan's prepetition, postpetition and post-effective date professional activities in representing individual creditors, the Committee and the Responsible Officer. In each of these instances, the firm's services were being performed for clients with compatible goals (maximizing recoveries for unsecured creditors). The professional conduct in question (consensually representing parties whose interests are aligned) actually is fairly common.

Especially in smaller chapter 11 cases, bankruptcy counsel may serve in multiple roles during the course of a bankruptcy case, and these roles are specifically sanctioned in the Bankruptcy Code. *See* 11 U.S.C. § 327(c) ("[A] person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."); 11 U.S.C. § 1103(b) ("An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.").

Representation of one or more creditors of the same class that is being represented by the committee is acceptable and routine. 11 U.S.C. § 1103(b); *see also In re Oliver's Stores, Inc.*, 79 B.R. 588, 595 (Bankr. D.N.J. 1987) ("[I]t is clear that the representation of a creditors' committee and representation of individual creditors within that committee does not per se constitute the representation of an adverse interest."). While bankruptcy procedure tolerates multiple representations that are not adverse, having the ability to represent parties within the same class does not excuse an actual conflict. The main deficiency of the Motion, however, is its

11

failure to show "an actual, as opposed to a potential, conflict of interest." *All Star Carts*, 2010 U.S. Dist. LEXIS 53290, at *16 (quoting *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (internal citation omitted)).

No evidence of any actual conflict of interest has been presented by Iconix. The Motion is predicated on speculation that prior or contemporaneous client relationships may have improperly affected litigation judgments of the Olshan firm, but the Motion does not identify any real conflict resulting from Olshan's earlier representation of the Petitioning Creditors and the Committee nor does it specify in what way Iconix is being harmed by the alleged conflict. The complaints about Signature's decision not to pursue claims in this litigation against the Petitioning Creditors amount to little more than suspicions and appear designed as a platform to cast aspersions at an opponent while also casting doubt on the strength of Signature's claims. Whatever may have been the motivation for bringing the Motion, it certainly does not establish a basis for disqualification of plaintiff's chosen counsel.

When it comes to professional planning for litigation and making judgments about who to sue, counsel, in consultation with the client, routinely will decide which parties to name in litigation, and that is precisely what happened here. Olshan and the Responsible Person decided to sue those defendants who allegedly channeled value away from Signature and its creditors. Because the Petitioning Creditors are members of the class of creditors that ultimately may share in any recoveries to be realized from the adversary proceedings, it is hardly surprising that these creditors were not named as defendants. The fact that Olshan filed proofs of claim for two of the Petitioning Creditors is meaningless for purposes of this analysis. *See Commercial Union Ins. Co v. Marco Int'l Corp.*, 75 F. Supp. 2d 108, 113 (S.D.N.Y. 1999) (finding even that nominal concurrent representation does not warrant disqualification).

*Professional Rule 3.7*

Rule 3.7 of the Professional Rules provides guidance in situations where a lawyer for a party is expected to testify with respect to significant facts in dispute. Rule 3.7(a) deals with the individual attorney, rather than his or her law firm, and provides that

> [a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
> (1) the testimony relates solely to an uncontested issue;
> (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> (3) disqualification of the lawyer would work substantial hardship on the client;
> (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> (5) the testimony is authorized by the tribunal.

N.Y. R. Prof'l Conduct 3.7(a).

In applying Rule 3.7, the Second Circuit looks to the potential usefulness of the testimony to be offered by the attorney witness considering "factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *Sea Trade*, 2011 U.S. Dist. LEXIS 80668, at *23 (quoting *Finkel v. Frattarelli Bros., Inc.,* 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (internal citation omitted)). Even if none of the exceptions of Rule 3.7(a) apply, the decision to disqualify an attorney who is expected to testify at trial is discretionary. *See Hempstead Video,* 409 F.3d at 132-33.

The general presumption of a client's "well-recognized and entirely reasonable interest in securing counsel of their choice" is weighed against the policy underlying Rule 3.7(a) and the concern that

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result

13

>of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray*, 583 F.3d at 178, 180 (citing *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282–83 (2d Cir. 2004)). These policy issues are inapplicable as to Mr. Fox in his individual capacity because he will not be serving as Signature's trial counsel and Iconix is not seeking to disqualify him, just his firm.

The potential disqualification of an individual attorney for the reasons listed in Rule 3.7(a) is related to but distinct from the disqualification of a law firm by imputation under Rule 3.7(b). Rule 3.7(b) addresses the disqualification of the law firm of a lawyer-witness by imputation and provides, in relevant part, that

>[a] lawyer may not act as advocate before a tribunal in a matter if:
>(1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client ... .

N.Y. R. Prof'l Conduct 3.7(b)

Disqualification by imputation under Rule 3.7(b) requires the movant to prove "by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-79. "[P]laintiffs seeking disqualification under Rule 3.7(b) must make a considerably higher showing of prejudice than would be required under Rule 3.7(a)." *Id.* at 179. When the attorney-witness is not acting as trial counsel, the policy concerns stated previously are "absent or, at least, greatly reduced." *Ramey,* 378 F.3d at 283 (citation omitted).

A client's desire to retain counsel weighs "strongly against a finding of prejudice," and, absent an objection by the client or a substantial showing of prejudice, disqualification of a law firm typically is only appropriate in situations involving a conflict of interest. *See Murray*, 583

14

F.3d at 178, 180 (citing MODEL RULES OF PROF'L CONDUCT R. 3.7 cmt. 5) ("Because the tribunal is not likely to be misled when a lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness, [Model Rule 3.7(b)] permits the lawyer to do so except in situations involving a conflict of interest.")).

Iconix has used the Motion as a means to poke holes in the plaintiff's case and to lay out its version of the facts surrounding termination of the Rocawear License (a possible reason for having filed the Motion in the first place). The Motion portrays Mr. Fox as someone deeply involved in the subject matter with knowledge of material facts that may be prejudicial to Signature's litigation position.

Mr. Fox denies having such knowledge, and he has contradicted the underlying premise of the Motion. Signature's consistent theme is that Iconix misrepresented the status of the Rocawear License to both Mr. Fox and the Petitioning Creditors. *See* Labrosciano Aff. ¶¶ 9-13; Holloman Decl.[7] ¶¶ 41-45. Such questions of fact no doubt will be presented at trial and should not be decided now as part of a dispute framed by Iconix over the possible disqualification of counsel.

Olshan's ongoing role as counsel can be clarified easily without having to make any ultimate factual determinations. To put it succinctly, the Responsible Person has relied upon Olshan, accepts Mr. Fox's version of the facts and is perfectly content with his choice of Olshan as his counsel in this litigation. Most importantly for purposes of the current analysis under Rule 3.7, the Responsible Person, as a fiduciary, has confirmed that he wants Olshan to continue

---

[7] References to "Holloman Decl." are to the Declaration of Ellen V. Holloman in Opposition to Motion to Disqualify Olshan Frome Wolosky LLP [ECF No. 74].

15

prosecuting these cases on his behalf and sees no prejudice to his litigation position in having Mr. Fox by his side. That is sufficient to end all further discussion.

### *Conclusion*

A disqualification motion, especially one brought by an adverse party, will not be sustained on the basis of "[m]ere speculation." *Paretti v. Cavalier Label Co., Inc.*, 722 F. Supp. 985, 987 (S.D.N.Y. 1989) (citing *International Union v. National Caucus of Labor Comms.*, 466 F. Supp. 564, 570 (S.D.N.Y. 1979), *aff'd mem.*, 607 F.2d 996 (2d Cir. 1979)). Iconix has not met its burden of proving that disqualification of the Olshan firm is required under any of the applicable Professional Rules. Accordingly, the Motion is denied. Olshan is directed to submit an appropriate order that is consistent with this Memorandum Decision.

SO ORDERED.

Dated: New York, New York
      September 10, 2013

/s/ James M. Peck
_____
Honorable James M. Peck
United States Bankruptcy Judge