Harris N. Cogan
Andrew T. Hambelton
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
*Attorneys for Defendants Iconix Brand*
*Group, Inc. and Studio IP Holdings LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SIGNATURE APPAREL GROUP LLC,<br><br>    Debtor. | Chapter 11<br><br>Case No. 09-15378 (RG) |
| SIGNATURE APPAREL GROUP LLC,<br><br>    Plaintiff,<br><br> v.<br><br>JOSEPH LAURITA, CHRISTOPHER LAURITA, NEW STAR GROUP, LLC, ROC FASHIONS, LLC, RVC ENTERPRISES, LLC, RUBEN AZRAK, VICTOR AZRAK AND CHARLES AZRAK, ICONIX BRAND GROUP, INC., STUDIO IP HOLDINGS, LLC<br><br>    Defendants. | Adv. Pro. No. 11-02800 (RG)<br><br>**DEFENDANT ICONIX BRAND GROUP, INC.'S AND DEFENDANT STUDIO IP HOLDINGS LLC'S TRIAL BRIEF** |
| ROC FASHIONS, LLC,<br><br>    Third- Party Plaintiff,<br><br> v.<br><br>STUDIO IP HOLDINGS, LLC<br><br>    Third-Party Defendant. | |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .......................................................................................................................5

I.     STUDIO IP IS ENTITLED TO JUDGMENT DISMISSING THE BREACH OF
       CONTRACT CLAIM (COUNT VI) ..................................................................................5

II.    ICONIX BRAND GROUP IS ENTITLED TO JUDGMENT DISMISSING THE
       TORTIOUS INTERFERENCE WITH CONTRACT CLAIM (COUNT VII) ...................8

III.   THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT
       DISMISSING THE FRAUD CLAIM (COUNT I)............................................................9

IV.    THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT
       DISMISSING THE NEGLIGENT MISREPRESENTATION CLAIM (COUNT
       II).................................................................................................................................12

V.     THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT
       DISMISSING THE AIDING AND ABETTING BREACH OF FIDUCIARY
       CLAIM (COUNT IV) ....................................................................................................13

VI.    THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT
       DISMISSING EACH OF THE RESPONSIBLE PERSON'S CAUSES OF
       ACTION BECAUSE THE RESPONSIBLE PERSON CANNOT ESTABLISH
       ANY DAMAGES ..........................................................................................................14

       A.     The Responsible Person Could Not Have Assumed or Assigned the
              License Agreement ..............................................................................................15

       B.     Even if Signature Could Have Assigned the License Agreement
              and Studio IP Would Have Consented, the License Agreement Had
              No Value ...............................................................................................................16

       C.     The Responsible Person Is Not Entitled to the Remedy of
              Disgorgement.........................................................................................................18

CONCLUSION.......................................................................................................................19

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allbrand Discount Liquors, Inc. v. Times Square Stores Corp.*,
  60 A.D.2d 568 (2d Dep't 1977) ........................................................................................7

*Banque Franco-Hellenique De Commerce Int'l et Maritime, S.A. v. Christophides*,
  106 F.3d 22 (2d Cir. 1997).............................................................................................9

*Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*,
  495 F. Supp. 2d 353 (S.D.N.Y. 2007).........................................................................18

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003)..........................................................................................11

*Don v. Singer*,
  33 Misc. 3d 1226(A) (Sup. Ct. New York County 2011)............................................18

*Dress Shirt Sales, Inc. v. Hotel Martinique Associates*,
  12 N.Y.2d 339 (1963) ..................................................................................................15

*Ferring B.V. v. Allergan, Inc.*,
  No. 12 Civ 2650, 2014 WL 988595 (S.D.N.Y. Mar. 13, 2014) ...................................8

*Fin. One, Inc. v. Bong Suk Chang*,
  2011 U.S. Dist. LEXIS 14110 (S.D.N.Y. Feb. 10, 2011).........................................12

*FNF Touring LLC v. Transform America Corp.*,
  111 A.D.3d 401 (1st Dep't 2013) ................................................................................10

*Gomez-Jimenez v. N.Y. Law Sch.*,
  103 A.D.3d 13 (1st Dep't 2012) ..................................................................................10

*Guard-Life Corp. v. S. Parker Hardware Mrg. Corp.*,
  50 N.Y.2d 183 (1980) ..................................................................................................18

*Herzfeld v. JPMorgan Chase Bank, N.A.*,
  354 Fed. Appx. 488 (2d Cir. N.Y. 2009) .................................................................9, 10

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
  227 F.3d 8 (2d Cir. 2000)..............................................................................................12

*In re Alexander*,
  2005 WL 2250654 (Bankr. D. Vt. June 15, 2005)........................................................6

*In re Consolidated Partners Inv. Co.*,
  156 B.R. 982 (Bankr. N.D. Ohio 1993) ...................................................................6

*In re C.W. Mining Co.*,
  No. 08-20105, 2008 WL 3539795 (Bankr. D. Utah Aug. 7, 2008) ...........................6

*In re N.C.P. Mktg. Group, Inc.*,
  337 B.R. 230 (D. Nev. 2005) ...................................................................................15

*In re Roxy Roller Rink Joint Venture*,
  73 B.R. 521 (Bankr. S.D.N.Y. 1987) ........................................................................6

*In re XMH Corp.*,
  647 F.3d 690 (7th Cir. 2011) ...................................................................................15

*Kargo, Inc., v. Pegaso PCS, S.A. de C.V.*,
  2008 WL 2930546 (S.D.N.Y. July 29, 2008) ...........................................................8

*Manville Corp. v. Equity Sec. Holders' Comm. (In re Johns-Manville Corp.)*,
  60 Bankr. 842 (S.D.N.Y. 1986) ...............................................................................10

*Martina Theatre Corp. v. Schine Chain Theatres, Inc.*,
  278 F.2d 798 (2d Cir. 1960) ....................................................................................18

*Pan Am Corp. v. Delta Air Lines*,
  175 B.R. 438 (S.D.N.Y. 1994) .................................................................................10

*Pasternak v. Dow Kim*,
  961 F. Supp. 2d 593 (S.D.N.Y. 2013) ......................................................................18

*Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters., Inc.*,
  833 F. Supp. 344 (S.D.N.Y. 1993) ...........................................................................15

*Utility Garage Corp. v. National Biscuit Co.*,
  71 A.D.2d 578 (1st Dep't 1979) ................................................................................7

*White Plains Coast & Apron Co. v. Cintas Corp.*,
  8 N.Y.3d 422 (2007) ..................................................................................................8

## STATUTES & OTHER AUTHORITIES

11 U.S.C. §§ 303 *et seq.* ......................................................................................2, 6, 14

11 U.S.C. § 363 ............................................................................................................6

11 U.S.C. §§ 365 *et seq.* ............................................................................................15

36 N.Y. Jur. Damages § 9 ...........................................................................................17

Defendants Iconix Brand Group, Inc. ("Iconix Brand Group") and Studio IP Holdings LLC ("Studio IP," and together with "Iconix Brand Group," the "Iconix Defendants") submit this trial brief to highlight the factual and legal issues that will be presented at the trial of this action.

## PRELIMINARY STATEMENT

The causes of action against the Iconix Defendants, as defined by the Court's Memorandum Opinion and Order dated March 4, 2015 (Dkt. Nos. 186, 187), that will be addressed at the trial commencing on April 21, 2015, are: (i) breach of contract (against Studio IP only); (ii) tortious interference with contract (against Iconix Brand Group only); (iii) fraud; (iv) negligent misrepresentation; and (v) aiding and abetting Christopher Laurita's alleged breach of fiduciary duty of care to Signature. Although the Responsible Person has tried to paint a story of deception and conspiracy orchestrated by the Iconix Defendants to terminate the License Agreement between Signature and Studio IP and to enter into a new license with Roc Fashions in violation of the automatic stay, the Court found in its Memorandum Opinion that the Responsible Person is not seeking damages under such a theory, and any such theory is pure fiction.

The indisputable facts are that pre-Petition Signature:

- was in dire financial distress;
- owed more than $7.4 million to Studio IP for past due royalties and fees;
- owed its manufacturers (the Petitioning Creditors) $2.5 million for merchandise; and
- unequivocally advised the Iconix Defendants that it could not continue its performance under the License Agreement.

For months, Signature tried to find a partner or investor to work with it to negotiate a new license with Studio IP. No one was interested. After Studio IP sent a notice of default, and the

1

Petitioning Creditors filed an involuntary bankruptcy case, the interested parties, who were all represented by counsel, negotiated a global transaction whereby Signature agreed to the termination of the license, Roc Fashions, LLC ("Roc Fashions")—an independent third-party—was provided a new license with a longer term and lower royalties and fees and Roc Fashions agreed to pay the Petitioning Creditors for their inventory and to continue purchasing from them.

The Responsible Person's claims are premised on the fact that the Iconix Defendants did not send a written notice of termination of the License Agreement.  But the Iconix Defendants will demonstrate that Signature unequivocally repudiated and abandoned the License Agreement because Signature's continued performance under it was what Signature's principal, Christopher Laurita, described as a "factual impossibility."  Thus, the Iconix Defendants' failure to send a written notice of termination was immaterial and irrelevant.  And having repudiated the License Agreement, Signature then agreed to its termination during the gap period as part of the global resolution, which it was permitted to do under Section 303(f) of the Bankruptcy Code.

The Responsible Person will also try to establish that the Iconix Defendants sought to cover up the alleged improper termination of the License Agreement by making fraudulent statements in the Disclosure Statement and Amended Disclosure Statement that the License Agreement was terminated "pursuant to [its] terms."  Although the Court found that these statements were false, the evidence will show that the Iconix Defendants did not draft the Disclosure Statement or Amended Disclosure Statement.  Rather they were jointly drafted by Signature's bankruptcy counsel, Riker Danzig, and counsel for the Creditors' Committee, Olshan, which both knew that no written notice of termination had been sent.  Indeed, this Court found in its Memorandum Opinion that the Creditors' Committee—which was represented by Olshan—stated in its First Day Objections that "[w]hen it became clear that the Debtor could no

2

longer perform its obligations under the Iconix licenses, the Debtor and Iconix agreed to terminate the licenses" and "[t]here is no genuine dispute that such an agreement was made." (Memorandum Opinion, Dkt. No. 186, at 17.)  And Signature, its bankruptcy counsel and its investment banker noted in an e-mail that only a notice of default had been sent (*see* DE 142-6, Holloman Decl., Ex. 44).

Andrew Tarshis, the former general counsel of the Iconix Defendants, signed the Disclosure Statement in his capacity as a member of the Creditors' Committee at the request of Olshan.  The evidence will show that the Iconix Defendants had no intent to deceive.  Rather, Olshan was trying to get the Disclosure Statement filed as soon as possible and when Tarshis did not return the signed Disclosure Statement quickly enough, Olshan sought to have it signed by another member of the Creditors' Committee.  The only statement concerning the status of the License Agreement that the Responsible Person will point to from the Iconix Defendants is an e-mail from Andrew Eckstein, Esq. of Blank Rome LLP that confirms only that the license had been terminated, which is true because Signature repudiated the License Agreement and then agreed to its termination.  (*See* DE 142-14, Holloman Decl., Ex. 98.)  Nor can the Responsible Person possibly claim that there was any justifiable reliance upon any false statement.  Signature knew that no written notice of termination had been sent.  And there is no evidence that the Responsible Person ever even asked the Iconix Defendants for a copy of a written notice of termination.

To the extent that the Responsible Person will try to fall back on a claim for negligent misrepresentation, this claim is barred because the Iconix Defendants did not owe a special duty to Signature or its Estate, and the First Amended Plan of Liquidation eliminates claims against "the Committee and its members (solely in their capacity as members of the Committee)" as a

3

result of ordinary negligence.  (*See* First Amended Plan, DE 107 in *In re Signature Apparel Group, LLC*, Case No. 09-15378, § 13.10.)

Nor can there be any claim against the Iconix Defendants based on the consulting agreement entered into between Roc Fashions and New Star Group, LLC ("New Star").  Even if the Court permits the Responsible Person to offer evidence of Christopher Laurita's alleged breach of the fiduciary duty of loyalty for entering into the consulting arrangement (which claim was dismissed--the Responsible Person is seeking to pursue an interlocutory appeal of this issue), the Responsible Person cannot point to any evidence that the Iconix Defendants knew of—let alone substantially assisted in that consulting agreement.  The Iconix Defendants were never told of the New Star consulting agreement, which was an informal verbal agreement between Roc Fashions and New Star.  Indeed, the consulting agreement was not part of the Roc Fashions transaction—it was agreed to subsequently because Roc Fashions wanted Christopher Laurita to act as a salesperson for Rocawear and other brands.

Nor did the Iconix Defendants substantially assist in any alleged breach by Christopher Laurita of his duty of care by acquiescing to the termination of the License Agreement.  As noted, there was no improper termination of the License Agreement because Signature repudiated the agreement and then agreed to its termination.  Because there was no improper termination, there was no breach of the fiduciary duty of care with respect to the transition of the Rocawear-brand to Roc Fashions for the Iconix Defendants to aid and abet.  But, in all events, the Iconix Defendants cannot be liable for aiding and abetting Christopher Laurita's alleged failure to negotiate down the Iconix Defendants' claims against the Estate.  The Iconix Defendants had no duty to act against their own interest.

4

Under all circumstances, the Responsible Person cannot establish damages on any of its claims. The License Agreement, which is in the nature of a personal services contract, is not assumable and assignable in bankruptcy without the Iconix Defendants' consent, which could be withheld for any or no reason. But even if Signature had been provided the opportunity to assume and assign the License Agreement—and assuming Studio IP would have consented—there was no one willing to take it because it had only 15 months remaining on its term, required the payment of above-market royalties and required a cure of more than $7.4 million. The Iconix Defendant's damages expert, James Volkman, will demonstrate that the License Agreement had no value, which is corroborated by Signature's bankruptcy counsel, Joseph Schwartz, and the Responsible Person's own damages expert (in his solvency analysis filed in the companion adversary proceeding alleging that the Lauritas made fraudulent transfers while Signature was insolvent (the "Companion Adversary Proceeding")) who both acknowledged that the License Agreement had no value to the Estate.

Accordingly, there is no legal or factual support for the Responsible Person's claims, and judgment should be entered in favor of the Iconix Defendants.

<u>ARGUMENT</u>

## I.    STUDIO IP IS ENTITLED TO JUDGMENT DISMISSING THE BREACH OF CONTRACT CLAIM (COUNT VI)

In this Court's Memorandum Opinion, the Court found that Studio IP did not send Signature a written notice of termination. (Memorandum Opinion, Dkt. No. 186, at 25.) But the Court noted that not sending a "contractually-required notice is excusable as futile where the nonperforming party (1) expressly repudiates the parties' contract or (2) abandons performance

5

under the contract."[1]  (Memorandum Opinion, Dkt. No. 186, at 25-26 (internal quotations and citations omitted).)  The Iconix Defendants will demonstrate that Signature unequivocally repudiated the License Agreement and then abandoned performance.

There is no dispute that in 2009 Signature was in a distressed state.  It was operating at a multi-million dollar loss and was in default of over $7.4 million under the License Agreement, as well as in default to its factor and the Petitioning Creditors.  As a result of the Company's financial trouble, Christopher Laurita acknowledged that Signature's "continued performance under the Licensing Agreement was a *factual impossibility*."  (*See* Proposed Iconix Trial Ex. E, Christopher Laurita's Opp. Br., DE 170-2, at pp. 3-4, 12-15 (emphasis supplied).)  And Signature expressly advised the Iconix Defendants of this "factual impossibility."  Acting upon its repudiation and trying to get out of the License Agreement, Signature sought investors or business partners for months to work with it to negotiate a new and different license agreement with significantly lower required payments.  There was never any discussion about continuing the same license.  But even so, no one was interested.  As further evidence of its repudiation and abandonment, Signature expressly agreed to the License Agreement's termination as part of the global resolution amongst all interested parties, which it was permitted to do during the gap period under Section 303(f) of the Bankruptcy Code.[2]

---

[1] As this Court noted, "repudiation of a contract may take one of two forms: (1) a statement by a party that he or she will commit a material breach of the contract; or (2) a voluntary affirmative act which renders the party unable to perform.  (Memorandum Opinion, Dkt. No. 186, at 26 (internal citation omitted).)

[2] *See* 11 U.S.C. § 303(f) ("the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."); *see also In re Roxy Roller Rink Joint Venture*, 73 B.R. 521, 526 (Bankr. S.D.N.Y. 1987) ("Code § 303(f) does not state that the debtor's operations are limited to the ordinary course of business . . . ."); *In re C.W. Mining Co.*, No. 08-20105, 2008 WL 3539795, at *2-*3 (Bankr. D. Utah Aug. 7, 2008) ("during this gap period, the Debtor has the ability to continue to use, acquire, or dispose of property inside or outside the ordinary course of business without notice to parties in interest or Court approval unless the Court orders otherwise"); *In re Consolidated Partners Inv. Co.*, 156 B.R. 982, 984 (Bankr. N.D. Ohio 1993) (involuntary debtor empowered to assign real property during the gap period because the restrictions on use and disposition of property under Section 363 did not apply); *see also In re Alexander*, No.

The Responsible Person will try to establish that there was no unequivocal repudiation because Signature was seeking investors to stay in business and made payments to Studio IP of $755,000 between January and May 2009.  But the fact that Signature may have wanted to remain a going concern so as to attract an investor does not detract from Signature's recognition that continuing with the License Agreement was a "factual impossibility."  And Signature's insubstantial payments in 2009 (the guaranteed minimum payment for 2009 under the License Agreement was $5 million) is further evidence that Signature was not and could not meet its contractual requirements.

Because Signature repudiated the agreement and then agreed to its termination, Studio IP was excused from futile acts such as sending a written notice of termination.  *See Allbrand Discount Liquors, Inc. v. Times Square Stores Corp.*, 60 A.D.2d 568, 568 (2d Dep't 1977) ("[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent"); *see also Utility Garage Corp. v. National Biscuit Co.*, 71 A.D.2d 578, 579 (1st Dep't 1979) (holing that when a party has entirely repudiated its obligations under an agreement, it may not then rely upon the failure of the other party to comply with a provision in the repudiated contract to receive a notice of a contemplated legal action).

Accordingly, the breach of contract claim against Studio IP should be dismissed at trial.

---

00-10500, 2005 WL 2250654, at *1 (Bankr. D. Vt. June 15, 2005) ("pending adjudication of the involuntary petition, involuntary debtors are generally permitted unfettered use of their assets").

## II.    ICONIX BRAND GROUP IS ENTITLED TO JUDGMENT DISMISSING THE TORTIOUS INTERFERENCE WITH CONTRACT CLAIM (COUNT VII)

Assuming, *arguendo*, that the Court finds there was a breach of the License Agreement by Studio IP,[3] the Responsible Person's tortious interference claim against Iconix Brand Group is barred by the economic interest defense.  Under New York law, a defendant that "acted to protect its own legal or financial stake in the breaching party's business" may raise the economic interest defense.  *See White Plains Coast & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007).  This defense is available where a defendant and a breaching party have a parent-subsidiary relationship.  *Id*.  If such a defense is raised, a claim for tortious interference "requires a showing of either malice on the one hand, or fraudulent or illegal means on the other."  *Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, No. 05-cv-10528, 2008 WL 2930546, at *10 (S.D.N.Y. July 29, 2008).

There is no dispute that Iconix Brand Group and Studio IP have a parent-subsidiary relationship.  There is no evidence that Iconix Brand Group directed Studio IP to breach the License Agreement, much less in a malicious, fraudulent or illegal manner.  Indeed, the Responsible Person's only allegations of fraudulent actions by the Iconix Defendants relate to statements in the Disclosure Statement and Amended Disclosure Statement that were filed in April and May 2010, respectively—months after Signature repudiated and agreed to terminate the License Agreement.  There is no claim that the Iconix Defendants engaged in any fraudulent conduct at the time the License Agreement was terminated in September 2009.

---

[3] If the Court finds that there is no viable claim for breach of the License Agreement, the Responsible Person's tortious interference claim fails as a matter of law.  *Ferring B.V. v. Allergan, Inc.*, No. 12 Civ 2650, 2014 WL 988595, at *11 (S.D.N.Y. Mar. 13, 2014) (holding claim for tortious interference with contract futile because there was no breach of contract, which is an essential element of such a claim).

Accordingly, Iconix Brand Group is entitled to judgment at trial dismissing the Responsible Person's tortious interference cause of action.

## III.   THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT DISMISSING THE FRAUD CLAIM (COUNT I)

To establish fraud, the Responsible Person "must show five elements by *clear and convincing* evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff."  *Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 Fed. Appx. 488, 489 (2d Cir. 2009) (internal citations omitted) (emphasis supplied); *see also Banque Franco-Hellenique De Commerce Int'l et Maritime, S.A. v. Christophides*, 106 F.3d 22, 25 fn. 2 (2d Cir. 1997) (noting that New York law requires that fraud be established by the heightened standard of proof of clear and convincing evidence).  Although the Court found in its Memorandum Opinion that the representations in the Disclosure Statement and the Amended Disclosure Statement that the License Agreement was terminated "pursuant to [its] terms" were false, the Responsible Person will not be able to demonstrate the other elements of fraud by clear and convincing evidence.  (*See* Memorandum Opinion, Dkt. No. 186, at 18.)

The evidence will show that:

- There was no affirmative misrepresentation by the Iconix Defendants because they did not draft the Disclosure Statement or the Amended Disclosure Statement.  Rather, the statements were drafted jointly by counsel for the Debtor, Riker Danzig, and counsel for the Creditors' Committee, Olshan.

- The Iconix Defendants had no duty to disclose additional information or correct the misstatements made by Signature's bankruptcy counsel and Olshan.

9

- o There was no mistaken perception of a material fact concerning the status of the License Agreement because Signature and the Responsible Person's attorneys, Olshan, were aware or should have been aware that no written notice of termination had been sent. Indeed, Signature, its bankruptcy counsel and its investment banker noted in an e-mail that only a notice of default had recently been sent. (Dkt. No. 142-6, Holloman Decl., Ex. 44.) And Olshan acknowledged in its First Day Objections that the License Agreement was terminated by agreement, which the Court found to be a truthful statement in its Memorandum Opinion. *See Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 Fed. Appx. at 489 (a party has a duty to disclose information if it has made a "partial or ambiguous statement that requires additional disclosure to avoid misleading the other party" only when that party is aware that the other party is "operating under a mistaken perception of a material fact.").

- o The Iconix Defendants had no fiduciary relationship with Signature or its Estate and thus no duty to disclose information or correct the misstatements. *See Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 18-19 (1st Dep't 2012) (dismissing plaintiffs' fraud claim because there is "no fiduciary relationship between parties engaged in an arm's length business transaction," and thus there exists no duty of full and complete disclosure) (internal citations omitted); *see also FNF Touring LLC v. Transform America Corp.*, 111 A.D.3d 401, 402 (1st Dep't 2013) ("absent a confidential or fiduciary relationship, there is no duty to disclose, and [a party's] mere silence, without identifying some act of deception, does not constitute a concealment actionable as fraud") (internal citations omitted).

- o The fact that Iconix Brand Group was a member of the Creditors' Committee does not create any duty between the Iconix Defendants and Signature or the Estate requiring the Iconix Defendants to correct the Disclosure Statement. *See Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 514 (S.D.N.Y. 1994) (holding that creditors' committee and its members do not owe fiduciary duties to the debtor or estate); *see also Manville Corp. v. Equity Sec. Holders' Comm. (In re Johns-Manville Corp.)*, 60 Bankr. 842, 854 n. 23 (S.D.N.Y. 1986), *rev'd on other grounds*, 801 F.2d 60 (2d Cir. 1986).

- Even if the statements in the Disclosure Statement and Amended Disclosure Statement are attributable to the Iconix Defendants because their then-general counsel, Andrew Tarshis, signed them in his capacity as a member of the Creditors' Committee, there is no evidence that the Iconix Defendants made these statements with an intent to deceive. To the contrary:

10

- o The Iconix Defendants first saw a draft of the Disclosure Statement on March 29, 2010—three days before it was filed. No one asked the Iconix Defendants' to verify the accuracy of the information in the background section of the Disclosure Statement where Riker Danzig and Olshan included the phrase "pursuant to [its] terms";

- o Olshan was pushing to have the Disclosure Statement filed as soon as possible;

- o When Tarshis did not immediately return signed copies of the Disclosure Statement, Olshan sought to have the Disclosure Statement signed by Michael Kim of Talful Ltd, which was another member of the Creditors' Committee, so that the Disclosure Statement could be filed as soon as possible; and

- o The only representation concerning the status of the License Agreement that the Responsible Person will point to from the Iconix Defendants is an e-mail from Andrew Eckstein, Esq. of Blank Rome LLP that confirms that the license had been terminated, which is true.

- The Responsible Person cannot establish that he of the Estate justifiably relied on any statement that the License Agreement was terminated "pursuant to [its] terms." The Responsible Person had at least a duty to inquire as to the facts and circumstances surrounding the termination of Signature's largest asset. Further, there is no evidence that the knowledge of the termination of the License Agreement was "peculiarly within" the Iconix Defendants' possession. As noted, this information was also in Signature's possession. Indeed, the lack of a written notice of termination was known by the Debtor and Debtor-in-possession—to whom the Responsible Person succeeded. Accordingly, the Responsible Person had at a minimum a duty to ask to see the written notice of termination, which it never did. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 786 (2d Cir. 2003) (holding that information was not "peculiarly within" defendants' knowledge because plaintiff had "available means of ascertaining the truth, which was readily accessible to any interested party who care to make the inquiry"). Indeed, when the Responsible Person cared to make the inquiry in 2012, it was able to learn that no written termination was sent.

- Under all circumstances, the Responsible Person cannot establish that the Estate was damaged as a result of the false statements in the Disclosure Statement or Amended Disclosure Statement because they were not filed until more than six months after the License Agreement was terminated and Studio IP entered into a new and different license with Roc Fashions.  Even if the Responsible Person could arguably have undone the transaction, as explained below, there were no damages because the License Agreement was unassignable without Studio IP's consent and it had no value.

Because the Responsible Person cannot establish by clear and convincing evidence the necessary elements of fraud, the Iconix Defendants are entitled to judgment at trial dismissing this claim.

## IV.    THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT DISMISSING THE NEGLIGENT MISREPRESENTATION CLAIM (COUNT II)

A claim for negligent misrepresentation requires the Responsible Person to establish that: (i) the defendant had a duty, as a result of a special relationship, to give correct information; (ii) the defendant made a false representation that he should have known was incorrect; (iii) the information supplied by the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (iv) the plaintiff intended to rely and act upon it; and (v) the plaintiff reasonably relied on the information to his or her detriment.  *Fin. One, Inc. v. Bong Suk Chang*, 2011 U.S. Dist. LEXIS 14110, at *10-*11 (S.D.N.Y. Feb. 10, 2011) (citing *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).  To the extent that the Responsible Person seeks to fall back on a negligent misrepresentation claim, such a claim fails because, as discussed above, the Iconix Defendants owed no duty to Signature or the Estate, there was no justifiable reliance and no damages.

12

But in all events, the Responsible Person's negligent misrepresentation cause of action is barred by the exculpation provision in the First Amended Plan of Liquidation. The First Amended Plan provides that "the Committee and its members (solely in their capacity as members of the Committee)" shall not have any liability to any "party-in-interest…for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of the Chapter 11 Case" as a result of ordinary negligence. (*See* First Amended Plan, § 13.10, DE 107 in *In re Signature Apparel Group, LLC*, Case No. 09-15378.) Because the Responsible Person seeks damages as the result of Iconix Brand Group's alleged negligent misrepresentation in its role as a member of the Creditors' Committee, this claim is barred by the First Amended Plan.

Accordingly, the Iconix Defendants are entitled to judgment at trial dismissing this cause of action.

## V.    THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT DISMISSING THE AIDING AND ABETTING BREACH OF FIDUCIARY CLAIM (COUNT IV)

In its Memorandum Opinion, the Court found that Christopher Laurita owed Signature a duty of care, but dismissed the breach of the duty of loyalty claim against him. (Memorandum Opinion, Dkt. No. 186, at 21.) The Responsible Person has sought an interlocutory appeal of the dismissal of his duty of loyalty claim to the District Court. Although the Court dismissed the duty of loyalty claim, the Court during a March 31, 2015 conference indicated that it would take evidence on this issue in the event the Memorandum Opinion and Order is reversed by the District Court.

Duty of Care:  As the Court noted in its Memorandum Opinion, the Responsible Person will seek to show that Christopher Laurita breached his duty of care by acquiescing to the termination of the License Agreement and that had he not done so, he could have tried to

13

negotiate a reduction in Studio IP's multi-million dollar claim against the Estate.  As discussed above, Signature repudiated the agreement and then agreed to its termination during the gap period which it was permitted to do under Section 303(f) of the Bankruptcy Code.  Therefore, there was no breach of the fiduciary duty of care with respect to the transition of the Rocawear-brand to a new licensee for the Iconix Defendants to aid and abet.  But, in all events, the Iconix Defendants cannot be liable for aiding and abetting Christopher Laurita's failure to negotiate down the Iconix Defendants' claims against the Estate.  The Iconix Defendants had every right to insist on pursuing its maximum claim.

Duty of Loyalty:  Although it is common for employees of the old licensee to join the new licensee because they have valuable institutional knowledge, the Iconix Defendants played no role in New Star's consulting relationship with Roc Fashions.  There is no evidence that any drafts of any consulting agreement were ever sent to or their terms discussed with the Iconix Defendants.  Indeed, the consulting agreement between New Star and Roc Fashions was an informal verbal contract and was entered into months after the Iconix Defendants entered into the new license with Roc Fashions because Roc Fashions wanted Christopher Laurita to act as the salesperson for its brands.

## VI.   THE ICONIX DEFENDANTS ARE ENTITLED TO JUDGMENT DISMISSING EACH OF THE RESPONSIBLE PERSON'S CAUSES OF ACTION BECAUSE THE RESPONSIBLE PERSON CANNOT ESTABLISH ANY DAMAGES

Signature seeks to recover two types of damages from the Iconix Defendants: (i) compensatory damages in the amount of $18,837,500; and (ii) disgorgement in the amount of $13,552,648 for four of its tort causes of action.  As discussed below, Signature's damages theories have no merit because they ignore the facts and are contrary to the law.

14

## A.    The Responsible Person Could Not Have Assumed or Assigned the License Agreement

The Code provides that a debtor may assume or reject any executory contract to which it is a party.  11 U.S.C. § 365(a).  In order to assume the obligations of an executory contract, however, the debtor must cure any outstanding default under the contract being assumed.  11 U.S.C. § 365(b)(1).  As noted, Christopher Laurita acknowledged that continuing with the License Agreement was a "factual impossibility."  As a result, Signature could not have assumed the License Agreement (which required the cure of the more than $7.4 million default) and continued to exploit its rights (which required on-going payments of above-market royalty rates while the company was operating at a multi-million dollar loss).

The Debtor-in-possession also could not have assigned the License Agreement. Trademark license agreements are in the nature of personal service contracts and are not assumable and assignable in bankruptcy absent the licensor's consent.  *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116 (Bankr. D. Del. 2015) (holding that under the hypothetical test, the Debtors were prohibited from assuming or assigning a trademark license agreement because under applicable non-bankruptcy law the trademark license agreement was nonassignable because the identity of the licensee was crucial to the agreement)[4]; *see In re XMH Corp.*, 647 F.3d 690, 694 (7th Cir. 2011); *see also In re N.C.P. Mktg. Group, Inc.*, 337 B.R. 230, 235-36 (D. Nev. 2005), *aff'd*, 289 F. Appx. 561 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1577 (2009).[5]

---

[4] This decision by the Bankruptcy Court for the District of Delaware was decided on February 20, 2015, after the parties' summary judgment papers were fully submitted and thus did not appear in the Iconix Defendants' motion papers.

[5] The License Agreement provides that "[n]either this Agreement nor any rights granted hereunder may be assigned, transferred or sublicensed by Licensee except to any of its subsidiaries, affiliates or related entities…or with the prior written consent of Licensor."  Therefore, Studio IP could have withheld its consent for any reason or no reason.  *See Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters., Inc.*, 833 F. Supp. 344, 349 (S.D.N.Y. 1993); *see also Dress Shirt Sales, Inc. v. Hotel Martinique Associates*, 12 N.Y.2d 339, 334 (1963) ("it is settled that, unless

Signature's own bankruptcy counsel concluded that the License Agreement had no value to the

Estate because there was a substantial cure amount and because it was unassignable in

bankruptcy as it was a trademark license agreement.  The Responsible Person's own expert even

ascribed no value to the License Agreement in his solvency analysis of Signature filed in the

Companion Adversary Proceeding.

Moreover, the evidence will show that no one was or would be willing to take over the

terms of the License Agreement because there were only 15 months left on the term, it had

above-market royalty rates and it involved a $7.4 million cure.  Despite Signature's extended

search for a potential new licensee for the Rocawear brand, the only interested party was Roc

Fashions.  But Roc Fashions was never prepared to take over the License Agreement on the same

terms.  It negotiated a significantly different license agreement.

**B.      Even if Signature Could Have Assigned the License Agreement and Studio IP Would Have Consented, the License Agreement Had No Value**

The Iconix Defendants will demonstrate through their expert, James Volkman, that the

License Agreement had no value.  Mr. Volkman, who is an expert in valuation of trademark

rights, will explain that to reach his conclusion he calculated the fair market value of the License

Agreement by determining the economic benefit that would be conferred upon a potential

sublicensee or assignee for the remaining 15 month term (the License Agreement expired on

December 31, 2010, with no renewal rights).

Mr. Volkman will testify that his calculations resulted in a value of $243,000 to Signature

if it could find a sublicensee or assignee willing to pay a 15.0% combined royalty (he assumed

such a rate because for Signature to receive any value for the sublicense or assignment it would

---

[the contract] provides that the lessor's consent shall not be unreasonably withheld, a provision against subleasing without the lessor's consent permits the lessor to refuse arbitrarily for any reason or no reason").

16

have to find someone willing to pay a higher royalty rate than the 13% it was paying).  But this amount assumed there was no default and the Iconix Defendants consented to the sublicense or assignment.  After factoring in that there was a $7.4 million cure, Mr. Volkman will testify that he concluded the License Agreement had no value as of September 15, 2009.

In contrast to Mr. Volkman's reasoned analysis of the fair market value of the License Agreement, the Responsible Person's expert did not even calculate the fair market value of the License Agreement.[6]  Instead, the Responsible Person will claim that the damages suffered by Signature are equivalent to the total compensation Roc Fashions agreed to pay to Studio IP and others for the Rocawear brand.  The Responsible Person's calculation mischaracterizes amounts that would be paid to Studio IP—even including amounts payable to Studio IP following the December 31, 2010 expiration of the Signature License Agreement—as damages to the Signature estate.

Even assuming the flawed logic that Signature would get the benefit of the Roc Fashions License Agreement, it would also have the obligations of that license.  Mr. Bonora's "economic damages" methodology considered only the income that might flow into Signature as a pass through, but completely disregarded that there were corresponding expenses and obligations that would have to flow out of Signature.  Therefore, the "payments" to Studio IP that Signature characterizes as damages to the Estate would be *obligations* of Signature to Studio IP for royalties and fees for the continued right to use the Rocawear mark.[7]

---

[6] Because the methodology of the Responsible Person's damages expert was flawed, the Iconix Defendants filed a *Dabaurt* motion to exclude his report and testimony.  (Dkt. No. 141.)  Although the Court denied the motion because this is a bench trial, the flawed methodology used by the Responsible Person's damages expert is still a significant issue in this case.

[7] Under all circumstances, the Responsible Person is not entitled to any damages because Studio IP has filed a proof of claim in the main bankruptcy case in the amount of $20,787,500 for Signature's breach of its payment obligations under the License Agreement, and Studio IP may be entitled to offset and/or recoupment based upon that claim.

**C.**     **The Responsible Person Is Not Entitled to the Remedy of Disgorgement**

In general, a party injured by another's tortious conduct is limited to recovering its actual

damages. *See* 36 N.Y. Jur. Damages § 9 ("The fundamental principle of damages, whether the

action is one for breach of contract or for a negligent act or omission, is fair and just

compensation, commensurate with the loss or injury sustained from the wrongful act complained

of"). Indeed, courts have held that the appropriate damage remedy for ordinary torts should

compensate the injured party for its loss. *See Martina Theatre Corp. v. Schine Chain Theatres,*

*Inc.*, 278 F.2d 798, 802 (2d Cir. 1960) ("the measure of damages for fraudulent

misrepresentation includes all pecuniary loss suffered in reliance upon the truth of the

representation."); *Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 495 F. Supp. 2d 353,

361 (S.D.N.Y. 2007) ("a party may recover only out-of-pocket losses" for a claim for negligent

misrepresentation); *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 598 (S.D.N.Y. 2013) (ruling

that there is no distinction between the damages under a claim for fraud and those recoverable

under negligent misrepresentation); *Guard-Life Corp. v. S. Parker Hardware Mrg. Corp.*, 50

N.Y.2d 183, 197 (1980) ("a plaintiff in an action for tortious interference is entitled to the full

pecuniary loss of the benefits of the contract with which the defendant interfered").

Under New York law, disgorgement damages are generally reserved for damages "in

connection with claims of self-dealing and divided loyalty." *Don v. Singer*, 33 Misc. 3d

1226(A), 1226(A) (Sup. Ct. New York County 2011). Here, the License Agreement was

negotiated and entered into at arm's length and there is no dispute that the Iconix Defendants did

not owe a fiduciary duty to Signature. Because there was no breach of fiduciary duty by the

Iconix Defendants, and Signature merely asserts ordinary tort causes of action, disgorgement is not an appropriate remedy.

CONCLUSION

The Iconix Defendants respectfully submit that the Responsible Person cannot establish any of the causes of action against the Iconix Defendants at trial and that judgment should be entered in favor of the Iconix Defendants dismissing the First Amended Complaint in its entirety as against them.

Dated: April 14, 2015                          **BLANK ROME LLP**

By: _/s/ Harris N. Cogan_____
     Harris N. Cogan
     Andrew T. Hambelton
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-028
(212) 885-5000
*Attorneys for Defendants Iconix Brand*
*Group, Inc. and Studio IP Holdings LLC*